# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BANK OF AMERICA, N.A. a Delaware corporation, | 3:00-cv-00450-BES-VPC |
| Plaintiff, | **ORDER** |
| v. | |
| WILLIAM BILLS; SHARON WASSON; ELVERINE CASTRO; THOMAS W. MAGIERA (deceased); THOMAS R. WASSON; and WINNEMUCCA INDIAN COLONY COUNCIL, | |
| Defendants. | |

Currently before this Court are Defendants Winnemucca Indian Colony and Chairman Thomas Wasson's (collectively referred to herein as the "Wasson Group") Motion for Summary Judgment (#147), filed on August 30, 2002, and the Wasson Group's Supplemental Statement in Support of Motion for Summary Judgment, Request for Distribution of Account and Dismissal of Interpleader (#202), filed on May 31, 2007. Defendants Winnemucca Colony Council and Chairman Linda Ayer (collectively referred to herein as the "Bills Group") filed an Opposition (#207) on September 12, 2007. The Bills Group also filed a Motion for Summary Judgment (#207) on September 12, 2007. The Wasson Group filed an Opposition to the Bills Group's Motion for Summary Judgment (#208) and a Motion to Strike (#208) on October 1, 2007. The Bills Group filed an Opposition to Motion to Strike (#209) on November 5, 2007, and a Reply (#210) to the Wasson Group's Opposition to Motion for Summary Judgment on November 8, 2007. The Wasson Group filed a Reply (#212) in support of their Supplemental Motion for Summary Judgment on November 19, 2007.

## BACKGROUND

On August 28, 2000, Plaintiff Bank of America filed a complaint in interpleader to resolve a dispute between various parties as to who had authority to use a bank account opened in the name of "Winnemucca Indian Colony." The suit arose after two tribal factions, each claiming to be the lawful tribal council for the Winnemucca Indian Colony, claimed to be entitled to the funds.

Prior to the filing of the complaint in interpleader, as of February 21, 2000, the members of the Winnemucca Colony Council were Chair Glenn Wasson, Vice Chair William Bills, and members Thomas Wasson, Elverine Castro, and Lucy Lowery. (Report and Recommendation of U.S. Magistrate Judge (#167)). Chair Glenn Wasson died on February 22, 2000. Id. Shortly thereafter, the tribal council split into two factions: (1) Vice Chair William Bills, who claimed to be the acting chair of the tribal council (the Bills Group); and (2) members Thomas Wasson, Elverine Castro, and Lucy Lowery, who claimed to be the majority of the tribal council (the Wasson Group). Id. Each faction maintained that they were the legitimate governing tribal council of the Winnemucca Indian Colony. Id.

On April 7, 2000, William Bills filed a Motion for Emergency Injunctive Relief in the Winnemucca Tribal Court. (Bills Group Motion for Summary Judgment (#207) at Exhibit A). This motion sought an order against the other council members ordering them to cease from interfering with the finances of the colony, and to turn over all bank account information and funds. On January 18, 2001, then-current Tribal Court Judge Kyle Swanson issued an order granting William Bill's motion for emergency relief. In that order, Judge Swanson held that William Bills was "duly seated and Acting Tribal Chairman of the Winnemucca Indian Colony," and that William Bills had the authority to "protect and disburse funds in all bank accounts holding funds by and for the Winnemucca Indian Colony." Id. The order also held that Thomas Wasson, Elverine Castro and Lucy Lowery "were not lawfully elected and do not officially hold the seats of Tribal Council members." Id. The Wasson Group appealed this order to the Inter-Tribal Court of Appeals of Nevada ("Inter-Tribal Court of Appeals") on January 23, 2001. (Bills Group Motion for Summary Judgment (#207) at Exhibit B). The Inter-

Tribal Court of Appeals ordered that a trial be held on the matter. Specifically, the court stated that "there exist several issues which have not been ruled upon and which should have been done prior to appeal." (Opposition to Motion for Summary Judgment (#208) at Exhibit 3). Furthermore, that court noted that "pursuant to stipulation by the parties," a trial would be conducted by "someone agreeable to the parties to conduct said trial." Id.

Trial was heard before *pro tem* Judge Steven Haberfeld. Following the trial, Judge Haberfeld issued an order finding, among other things, that there was no legitimately formed tribal council and ordered an election to establish the council. Both parties appealed Judge Haberfeld's decision. At the time of that appeal, the Inter-Tribal Court of Appeals, which would have normally heard the case, was not functioning because of lack of funds. As such, the parties stipulated to the appointment of a special appellate panel to hear appellate arguments and to issue a binding, non-appealable decision. (Wasson Group Motion for Summary Judgment (#147) at Exhibit 8). The special appellate panel consisted of a panel of judges from the Sioux Nation (the "Minnesota Panel").

The Minnesota Panel issued its decision on August 16, 2002. In its decision, the Minnesota Panel found that the valid tribal council included the following people: Sharon Wasson, Thomas Wasson, William Bills, Elverine Castro and Thomas Magiera until his death. (Wasson Group Motion for Summary Judgment (#147) at Exhibit 8). As such, the panel stated that "all subsequent activities of the Bills Council are found to be unconstitutional and invalid." Id. The panel also ordered that the council "declare a vacancy on the Colony Council because of the death of Thomas Magiera immediately and within 30 days of this order appoint a successor to fill the unexpired term of Thomas Magiera." Id. The Bills Group appealed the decision of the Minnesota Panel after the Inter-Tribal Court of Appeals was refunded.

Despite five more years of litigation, there is still a dispute between the parties as to which members constitute the legitimate tribal council. On May 17, 2007, the Inter-Tribal Court of Appeals issued an order dismissing the case stating that it had no appellate jurisdiction. (Supplemental Statement in Support of Motion for Summary Judgment (#202) at Exhibit 5). As a result, that court stated "we withdraw the mandates of all orders and rulings." Id. Both

3

1 sides now argue that the May 17, 2007 order supports their motion for summary judgment. 2 According to the Wasson Group, they are entitled to summary judgment because they have 3 now exhausted all tribal remedies and this Court has jurisdiction to distribute the funds in 4 accordance with the decision of the Minnesota Panel.  The Bills Group, on the other hand, 5 argues that they are entitled to summary judgment following the May 17, 2007 order, because 6 that order rendered all litigation before that court null and void and the parties are left with the 7 order issued by Judge Swanson on January 18, 2001, which held that the Bills Group was the 8 legitimate council.

## ANALYSIS

### A. Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a case will be dismissed if the court lacks the authority to hear and decide the dispute.  Lack of subject matter jurisdiction may be raised at any time by any party.  In re Kieslich, 258 F.3d 968, 970 (9th Cir. 2001); Intercontinental Travel Mktg., Inc. V. F.D.I.C., 45 F.3d 1278, 1286 (9th Cir. 1994).  Additionally, the court may *sua sponte* raise the issue of lack of subject matter jurisdiction and dismiss a case if no subject matter jurisdiction exists.  Fed. R. Civ. P. 12(h)(3); Intercontinental Travel, 45 F.3d at 1286.

In this case, the determination of subject matter jurisdiction is important because this dispute relates to the issue of tribal self-government.  The Supreme Court has "repeatedly recognized the federal government's longstanding policy of encouraging tribal self-government."  Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 14 (1987).  "Tribal courts play a vital role in tribal self-government and the federal government has consistently encouraged their development."  LaPlante, 480 U.S. at 14.  In discussing the holding in National Farmers Union, the Court in LaPlante stated:

> [A]lthough the existence of tribal court jurisdiction presented a federal question within the scope of 28 U.S.C. § 1331, considerations of comity direct that tribal remedies be exhausted before the question is addressed by the District Court. Promotion of tribal self-government and self-determination required that the tribal court have "the first opportunity to evaluate the factual and legal basis for the challenge" to its jurisdiction.

1  LaPlante, 480 U.S. at 15 (discussing National Farmers Union Ins. Co. v. Crow Tribe of Indians,
2  471 U.S. 845 (1985)).  "In diversity cases, as well as federal-question cases, unconditional
3  access to the federal forum would place it in direct competition with the tribal courts, thereby
4  impairing the latter's authority over reservation affairs." LaPlante, 480 U.S. at 16.
5       The Ninth Circuit found that it is "deeply rooted" in Supreme Court precedent that
6  federal courts must afford tribal courts deference "concerning activities occurring on
7  reservation land." U.S. v. Plainbull, 957 F.2d 724, 727 (9th Cir. 1992)(citing Santa Clara
8  Pueblo v. Martinez, 436 U.S. 49 (1978)).  Deference to tribal courts concerning tribal affairs
9  is a fundamental tenet of federal jurisprudence. Plainbull, 957 F.2d at 727.  "Tribes maintain
10 broad authority over the conduct of both tribal members and non-members on Indian land."
11 McDonald v. Means, 300 F.3d 1037, 1040 (9th Cir. 2002).
12       In this case, the Court recognizes the importance of tribal courts in promoting and
13 encouraging tribal sovereignty.  As such, the Court agrees that "a federal court should stay its
14 hand until tribal remedies are exhausted and the tribal court has had a full opportunity to
15 determine its own jurisdiction." U.S. ex rel. Kishell v. Turtle Mountain Hous. Auth., 816 F.2d
16 1273, 1276 (8th Cir. 1987)(citing National Farmer's Union Ins. Co., 471 U.S. at 856).  In this
17 case, the tribal court has had a full opportunity to determine its own jurisdiction.  This matter
18 has been pending for over seven years.  On May 17, 2007, the Inter-Tribal Court of Appeals
19 issued an order dismissing the case for lack of jurisdiction.  Based on that order, this Court
20 finds that the parties have exhausted all tribal remedies.  Because tribal remedies have been
21 exhausted, this Court has jurisdiction to enter summary judgment and distribute the bank
22 account funds held in interpleader.
23 **B.   Summary Judgment**
24       Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered
25 forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,
26 together with the affidavits, if any, show that there is no genuine issue as to any material fact
27 and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).
28 Summary judgment is "not warranted if a material issue of fact exists for trial."   Ribitzki v.

1  Canmar Reading & Bates, 111 F.3d 658, 661–62 (9th Cir. 1997).  A material fact is one that
2  "might affect the outcome of the suit under the governing law . . . ." Lindahl v. Air France, 930
3  F.2d 1434, 1436 (9th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49
4  (1986)).  Further, any dispute regarding a material issue of fact must be genuine— the
5  evidence must be such that "a reasonable jury could return a verdict for the nonmoving party."
6  Id.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for
7  the nonmoving party, there is no genuine issue for trial" and summary judgment is proper.
8  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

9        The burden of proving the absence of a genuine issue of material fact lies with the
10 moving party; accordingly, "[t]he evidence of the opposing party is to be believed, and all
11 reasonable inferences that may be drawn from the facts placed before the court must be
12 drawn in the light most favorable to the nonmoving party."  Id. (citing Liberty Lobby, 477 U.S.
13 at 255); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).  Nevertheless,
14 if the moving party presents evidence that would call for judgment as a matter of law, then the
15 opposing party must show by specific facts the existence of a genuine issue for trial.  Liberty
16 Lobby, 477 U.S. at 250; Fed. R. Civ. P. 56(e).  To demonstrate a genuine issue of material
17 fact, the nonmoving party "must do more than simply show there is some metaphysical doubt
18 as to the material facts." Matsushita Elec. Indus., 475 U.S. at 586. " If the evidence [proffered
19 by the nonmoving party] is merely colorable, or is not significantly probative, summary
20 judgment may be granted." Liberty Lobby, 477 U.S. at 249–50.

21       When the parties file cross-motions for summary judgment, as in this case, the court
22 must consider each party's motion separately and determine whether that party is entitled to
23 a judgment under Rule 56.  Western Land Exchange Project v. U.S. Bureau of Land Mgmt.,
24 315 F.Supp.2d 1068, 1075 (D. Nev. 2004).  Cross-motions for summary judgment do not
25 necessarily mean that there are no disputed issues of material fact, and do not necessarily
26 permit the judge to render judgment in favor of one side or the other.  Starsky v. Williams, 512
27 F.2d 109, 112 (9th Cir.1975).  In making these determinations, the court must evaluate the
28 evidence offered in support of each cross-motion.  Id. (citing Fair Housing Council of Riverside

6

County, Inc. v. Riverside Two, 249 F.3d 1132, 1136-37 (9th Cir. 2001)).  Applying these principles, the Court now turns to whether summary judgment is warranted in this case.

Both parties believe that no triable issues of fact exist and judgment should be entered in their favor.  As noted in the foregoing, the Wasson Group argues that they are entitled to summary judgment and a distribution of the bank account funds according to the decision of the Minnesota Panel.  The Bills Group, on the other hand, argues that they are entitled to summary judgment under Judge Swanson's order of January 18, 2001.

"Tribal sovereignty undoubtedly includes the power to establish a court system." Davis v. Muellar, 643 F.2d 521, 525 (8th Cir. 1981). "The tribes derive their adjudicatory power not from Article III, but from their inherent sovereignty as the aboriginal people of this continent, from the vestiges of their once absolute authority over their internal affairs." State of Montana v. Gilham, 133 F.3d 1133, 1136 (9th Cir. 1998).  As such, "an Indian tribe has the power, absent some treaty provision or act of congress to the contrary, to enact its own laws for the government of its people, and to establish courts to enforce them." Colliflower v. Garland, 342 F.2d 369, 376 (9th Cir. 1965).

"As a general rule, federal courts must recognize and enforce tribal court judgments under principles of comity." AT & T Corp. v. Coeur d'Alene Tribe, 295 F.3d 899, 903 (9th Cir. 2002).  Two circumstances preclude recognition: "when the tribal court either lacked jurisdiction or denied the losing party due process of law." Id.  "Unless the district court finds the tribal court lacked jurisdiction or withholds comity for some other valid reason, it must enforce the tribal court judgment without reconsidering issues decided by the tribal court." Id. In this case, the parties are asking the Court to enforce two separate judgments arising from the tribal court adjudication. The first is the January 18, 2001 order issued by Judge Swanson recognizing the Bills Group as the legitimate tribal council.  The second is the August 16, 2002 decision by the Minnesota Panel which listed the following individuals as the legitimate council: Sharon Wasson, Thomas Wasson, Williams Bills, Elverine Castro and Thomas Magiera until his death.

1    The Bills Group argues that this Court must enforce the January 18, 2001 order issued by Judge Swanson because the Inter-Tribal Court of Appeals stated in its May 17, 2007 order that "we withdraw the mandates of all orders and rulings." (Bills Group Motion for Summary Judgment (#207) at p. 4). Thus, all previous orders arising from the Inter-Tribal Court of Appeals are withdrawn. Id. The Bills Group argues that this includes the decision by the Minnesota Panel because that decision arose from an appeal of Judge Haberfeld's decision, and, Judge Haberfeld's decision, in turn, was issued after the Inter-Tribal Court of Appeals remanded Judge Swanson's order for trial. As such, according to the Bills Group, because the Inter-Tribal Court of Appeals directed a trial on Judge Swanson's order, and such trial resulted in Judge Haberfeld's order, that branch of litigation is null and void under the Inter-Tribal Court of Appeal's May 17, 2007 order. Id. Thus, the Bills Group argues that the decision of the Minnesota Panel is "without any legal force and effect." Id. at p. 15. The Wasson Group argues that the Court must enforce the Minnesota Panel's order because that decision was rendered by an independent panel created by stipulation of the parties. As such, that panel's decision is not affected by the Inter-Tribal Court of Appeals' order dismissing the case for lack of jurisdiction.

    This Court finds that the decision by the Minnesota Panel is controlling in this matter. As noted, the Bills Group argues that the decision of the Minnesota Panel is without force or effect following the Inter-Tribal Court of Appeals' order dismissing the case for lack of jurisdiction. Although the Minnesota Panel was convened following an appeal to the Inter-Tribal Court of Appeals from Judge Swanson's order, the Inter-Tribal Court of Appeals' May 17, 2007 order does not withdraw the decision by that panel. The Minnesota Panel was a specially appointed appellate panel created by stipulation of the parties. The panel was convened specifically to hear appellate arguments and to issue a binding, non-appealable decision. (Wasson Group Motion for Summary Judgment (#147) at Exhibit 8). Moreover, the panel was created at a time when the Inter-Tribal Court of Appeals did not even exist because of lack of funding. As such, the Inter-Tribal Court of Appeals lack of jurisdiction over this case does not affect the jurisdiction of the Minnesota Panel.

In addition, the fact that the Minnesota Panel's decision arose from a trial that had been directed by the Inter-Tribal Court of Appeals does not divest that decision of its legal force and effect. A review of the Inter-Tribal Court of Appeals' order remanding the case for trial shows that the court did not make any substantive decision on the merits of the case. Rather, it simply stated that "several issues have not been ruled upon and which should have been done prior to appeal." That court's order then states that "pursuant to stipulation of the parties" the parties will conduct a trial on such issues. The parties then agreed to have *pro tem* Judge Haberfeld hear their case at the trial level. The parties further stipulated to create a special panel to hear appeals from Judge Haberfeld's decision. As such, those two tribunals were created by stipulation of the parties and are not affected by the Inter-Tribal Court of Appeals' lack of jurisdiction.

Based on the foregoing, this Court finds that the decision by the Minnesota Panel is in full force and effect following the Inter-Tribal Court of Appeals' dismissal for lack of jurisdiction. Under principles of comity, that decision is entitled to enforcement in this Court. As such, the funds of the Bank of America account which have been held in interpleader in this matter will be distributed to the tribal council recognized by the Minnesota Panel's August 16, 2002 order.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the Wasson Group's Motion for Summary Judgment (#147), Supplemental Statement in Support of Motion for Summary Judgment, Request for Distribution of Account and Dismissal of Interpleader (#202) is GRANTED.

IT IS FURTHER ORDERED that the Bills Group Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that all other pending motions are DENIED.

DATED: This 6TH day of March, 2008.

_____
BRIAN SANDOVAL
United States District Judge

9